[Crim. No. 4094. Second Dist., Div. One. May 22, 1947.]

THE PEOPLE, Respondent, v. SEFERINO ORONA, JR., Appellant.

Jesse Bach Porter for Appellant.

Fred N. Howser, Attorney General, Frank Richards, Deputy Attorney General, W. E. Simpson, District Attorney, and Jere J. Sullivan, Deputy District Attorney, for Respondent.

YORK, P. J.—Defendant was charged in an information containing four counts with (1) the crime of assault by means of force likely to produce great bodily injury upon Joe C. Clemens, Jr., (2) the crime of grand theft in that he took an automobile belonging to said Joe C. Clemens, Jr., (3) the crime of violation of section 503 of the Vehicle Code by taking and driving the automobile of said Joe C. Clemens, Jr., in his absence and without his consent with intent to deprive the latter of his title and possession thereto, and (4) a violation of section 480 of the Vehicle Code, in that while driving an automobile he was involved in an accident resulting in injuries to William H. Fitch and failed to stop and render aid. The jury brought in its verdicts finding defendant guilty as charged in counts 1, 3 and 4, and found him not guilty of grand theft, as charged in count 2 of the information.

Defendant prosecutes this appeal from the judgment of conviction which was thereafter entered, and from an order denying his motion for a new trial.

It is here contended that the trial court erred (1) in overruling appellant's objection to leading questions of the prosecution; (2) in holding that the evidence was sufficient to sustain a conviction under section 503 of the Vehicle Code. Also, that the court abused its discretion in overruling appellant's motion to exclude the witnesses from the courtroom.

At the trial of the instant prosecution, Mr. Clemens testified that he met appellant for the first time at Chris' bar in the vicinity of Washington and Maple in the city of Los Angeles on June 18, 1946, where he also met Mrs. Shannon; that the witness was the owner of a 1940 Studebaker business coupe which he had parked near the bar; that about 10 p. m. the three persons left the bar, appellant having asked Mr. Clemens to take him home to pick up his brother's car because he had a date with Mrs. Shannon and wanted to take her out; that the three of them got in Clemens' automobile and Clemens drove to the place where appellant said he lived, but there was no car there; that appellant wanted to get something to eat, but Clemens stated he was out of gas, whereupon appellant suggested that they go to the place where he was employed and he would fill the tank; that whereupon the witness Clemens drove out Washington Boulevard to the place mentioned by appellant where they backed the car "against a pick-up truck and took the gasoline out of the barrel . . . on the back of this pick-up truck"; that appellant then told the witness where to go and he drove "up on the top of a mesa near the river"; that the witness formerly had been a fireman for the Santa Fe Railway and when he heard an engine whistling across the river, he wanted to go and watch the engines come into the roundhouse; that turning the lights off and leaving the keys in the car, he got out and walked about 300 feet; that he was gone about fifteen minutes and when he returned he found the car parked in the same place and observed Mrs. Shannon lying flat on the ground alongside of the automobile and appellant standing over her hitting her with his fist on the head and face; that the witness immediately shoved appellant over, picked up Mrs. Shannon and placed her in the front seat of the car, at which time he "had a little argument or tussle" with appellant and knew nothing more until he waked the next morning suffering from lacerations on both sides of his head, a broken jaw and broken ribs, and found himself in a colored man's shack; that he was taken to a hospital, where he remained two weeks and later recovered his car from the police.

The witness Booker testified that on June 18, 1946, he was living east of the Los Angeles River and north of Washington Street in a one-room shack, close to the Sears-Roebuck plant; that he was in bed when Mr. Clemens rapped on the door and said "Here I am"; that Clemens was "all smashed

up. His face was all cut up . . . his face was just a mat of blood,'' and he was scarcely able to get around; that the witness arose and helped put Clemens to bed; in the morning he gave Clemens a cup of coffee, but the latter ''couldn't drink it''; that Clemens asked the witness to drive him home saying, ''My car is parked over there''; that no car was parked near the shack; that the witness declined to call the police because he ''did not want to be involved in anything like that,'' but told Clemens to go to the gravel pit in the neighborhood and have someone there ''call up an ambulance for you.''

Mrs. Shannon testified that on the night of June 18, 1946, she was at Chris' bar and saw Mr. Clemens and appellant there; that she knew neither one before that night; that she left the bar alone at 10:30 p. m., at which time one of the men offered her ''a lift home''; that she got in the car, Mr. Clemens driving and appellant seated on her right-hand side; that she was not very well acquainted with Los Angeles and did not know where they went, but that they finally stopped at a vacant lot; that she ''was forcibly taken from the car by the defendant . . . He knocked me down and tried to attack me. I don't remember anything except being hit with his fist''; that she was dazed but not unconscious; that she ''never did see Mr. Clemens from the time the car stopped. I never saw him after the time the car stopped. I don't know where he was''; that she remembered being in the car after the beating; that appellant got in and drove the car away from the lot; that Mr. Clemens was not in the car; that the witness remembered an impact and crash but ''didn't even know a car was hit''; that appellant was driving at the time of the crash and left the witness ''sitting on the right-hand side of the car. . . . He got out of the car behind the wheel in the driver's seat and left in front of the car, in front of the headlights. . . . I saw him cross in front of the car; I saw the defendant.'' That she got out of the car and walked around to get some air; that she was not acquainted in Los Angeles very much and didn't know where the accident occurred, but could identify the place if driving out there; that in the impact she was thrown against the windshield and was bleeding profusely, but did not know whether she ''was cut by the windshield or by the defendant.''

The witness Savedra testified that about 9:45 in the morning of June 19, 1946, he saw Mr. Clemens about 300 feet

from Mr. Booker's shack; that Clemens was "cut up pretty bad . . . I saw blood all over his face"; and that he asked the witness to give him a ride to the nearest telephone, which the witness did.

Mr. William H. Fitch testified that some time before midnight of June 18, 1946, accompanied by his wife, he was driving a Ford convertible coupe on Industrial Street; that he "came to Washington Boulevard and I stopped at the stop sign. There was no indication of any traffic on either Industrial or Washington Boulevard. I started, got across the street, or half way, or better than half way across the street, when I was struck. . . . The right-hand side of my car"; that he was thrown out of his car and suffered a slight concussion, a gash on his forehead, a broken rib and a broken nose; that he did not see what struck him; that he was taken to the emergency hospital twenty minutes or half an hour after the accident, during which period he was lying on the ground and no person offered to aid him in any way or identified himself as the driver of the car that hit the witness.

State Traffic Officer Russell testified that on June 18, 1946, at 11:15 p. m., he answered a call at Industrial and Washington Boulevard and found a wrecked Ford coupe blocking the street; that he made a search of the immediate vicinity to see what had collided with the Ford and discovered no other vehicle, but saw a hub cap (People's Exhibit No. 3) on the running board of the Ford; that about 1 a. m. of June 19th, he saw a Studebaker President coupe parked at the northeast corner of Grande Vista and Washington Streets, which point is three or four miles from Industrial and Washington; that the glass in the windshield of the Studebaker was cracked; that he and his partner held up the hub cap, rim and headlight "to the parts that were missing, to see if they would fit and match the other hub caps," and he observed that they were similar to those left on the car; that he impounded the Studebaker at a state garage. On cross-examination using a map, the officer testified "When I found the Studebaker it was parked right here, and nobody was in it and I knew it was the car we wanted, so we started patroling the neighborhood looking for the driver and in our patrols we went west on Olympic and met Mrs. Shannon on the north side of Olympic in the street; she, in fact, flagged us down . . . between Lorena and Soto Streets; that the Los Angeles River is not very far from Soto Street."

State Traffic Officer Carl L. Thomas testified that he and Officer Russell answered a call to Industrial and Washington Boulevard shortly after 11 p. m. on the night in question and observed a Model A Ford in the intersection, and over to the side Mr. Fitch was lying on his back; that within ten feet of the point of impact he picked up a Studebaker President hub cap, a rim and headlight ''along with a tire and wheel of the Model A that was knocked off''; that he later examined the Studebaker at the corner of Grande Vista and Washington and found the right front thereof damaged, ''the headlight was knocked out on the right front, the rim was missing, the right hub cap off the Studebaker was missing, and the windshield on the right hand side of the car . . . was shattered . . . there was blood inside the car on the seat and (on) the blanket on the right-hand side, but there was no damage to the steering wheel, or anything on the driver's side of the car at all.'' This witness further testified that they picked up Mrs. Shannon west of the place where the Studebaker was found, near Olympic at approximately 4 a. m.; that ''she was hitch-hiking and we noticed her face was badly bleeding, so we picked her up.''

Traffic Accident Investigator C. O. Roberts testified that he had a conversation with appellant on June 22, 1946, about 2 p. m. in the 77th Street Division of the Los Angeles Police Department, at which time he said: ''Sam, you got yourself in a lot of trouble last night, didn't you? He said, 'Yes.' I said, 'You beat this man up, took his car and this girl, and then you had the hit and run accident, after which you abandoned the car.' He said, 'That is right.' I said, 'Well, how did you get in here, Sammie?' He said, 'Well, after I abandoned the girl and the car, I was making my way home when I was picked up by two Los Angeles police officers and booked on a traffic warrant.' ''

Appellant took the stand in his own defense and testified to meeting Mr. Clemens and Mrs. Shannon in Chris' bar on the night in question; that Mr. Clemens asked him if he knew where they could go to listen to Mexican music and get some Mexican food; that he said he did and the three of them left the bar; that Clemens needed some gas and appellant directed him to the place where he worked and they got the gas and Clemens drove on, finally stopping the car and said, ''Let's park for a little while,'' and got out of the car telling appellant to stay in the car; that said witness (appellant) sat down and ''didn't talk to this girl or anything. I just

sat there for a little while''; that Clemens returned and the witness got out of the car and Clemens called Mrs. Shannon and she got out; that Clemens and Shannon were talking while the witness stood on the right side of the car and pretty soon Clemens came up to the witness and started pushing and they started fighting; that the witness lost consciousness; that when he came to the car was gone and no one was around, so he started walking back home; that he boarded a street car but was hungry and got off at 7th and Central to look for a restaurant; that he walked west on 7th Street and when he got to 7th and Kohler Street two officers stopped him and took him in to ''investigate'' him and later booked him for a traffic violation.

It appears from the foregoing statement that there was sufficient evidence adduced at the trial herein from which the jury could find that appellant committed an assault upon Mr. Clemens and left him in the vacant lot near Mr. Booker's shack; that appellant then took possession of the Clemens' car with Mrs. Shannon sitting therein and drove away, colliding with the Field car at the intersection of Industrial and Washington Boulevard; that appellant did not stop or render aid at the scene of the collision, but drove on to Grande Vista and Washington, where he abandoned the car and Mrs. Shannon, who was bleeding profusely from injuries she received in the crash with the Field car. The only evidence in rebuttal was the testimony of appellant.

Appellant sets forth in his opening brief seven questions asked of Mrs. Shannon by the prosecution, which he contends were leading and that the court's failure to sustain his objection thereto was prejudicial to his case. The basis of his objection is that it appears from the direct and cross-examination of Mrs. Shannon that she was in such a state of intoxication at the time covered by the questions that she was unable to perceive or be conscious of the events that took place.

When asked if she had been drinking, Mrs. Shannon answered: ''I was drinking beer.'' There is no evidence in the record that she was intoxicated or unconscious, although she was dazed from the beating she received from appellant. She remembered that appellant drove the automobile away from the vacant lot after he attacked her and also he was driving the car at the time of the crash, after which he left the car.

In view of the treatment Mrs. Shannon received at the hands of appellant, it may be that she did not remember every detail of what occurred on the night in question, but that does not indicate that she was either intoxicated or unconscious.

Assuming that the questions were leading, it is proper to ask leading questions when they are designed to lead the witness more quickly to matters which are material to the issues. (Wharton's Criminal Evidence, 11th ed., vol. 3, pp. 2135-2149, §§ 1269-1271.) Appellant, for example, objected to the question "Did the car come to a stop at that lot?," on the ground that it was leading and suggestive and that it took two pages of testimony at the preliminary hearing to ascertain where the car stopped. In overruling the objection and permitting the witness Shannon to answer, "Yes, it did, your Honor."—no prejudicial error was committed by the trial court.

In connection with his second point that the evidence is insufficient to sustain the verdict on any count for the reason that (1) the testimony of the two principal witnesses is unreliable; (2) the prosecution introduced no evidence of how and by what means the assault was committed; and (3) "the location of the parties involved in reference to the abandoned car also supports the contention of the appellant that he was not the driver of the car at the time of the accident," suffice to say that the points urged involve questions of fact, and that an examination of the evidence adduced at the trial herein conclusively shows that the jury's verdict is amply supported by such evidence.

Appellant urges that the court abused its discretion in denying his motion to exclude the witnesses at the trial. At the time such motion was made, it was brought out that all of the witnesses testified at the preliminary hearing, hence appellant's ground for the motion "I don't want them to be told what they are going to testify to here," was insufficient reason for the exclusion of the witnesses from the courtroom.

The record discloses amply sufficient evidence to support the judgment and no error sufficiently prejudicial to authorize a reversal.

For the reasons stated, the judgment and order appealed from are, and each of them is, affirmed.

Doran, J., and White, J., concurred.